COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP2294-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2022CM130

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

TYLER G. RICE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Barron County: MAUREEN D. BOYLE, Judge. *Reversed and cause remanded with directions*.

¶1     GILL, J.[1]  Tyler Rice appeals from a judgment of conviction, entered upon a jury's verdict, for disorderly conduct. On appeal, he argues that the circuit court erred by denying his motion to instruct the jury on self-defense

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

and defense of others. For the following reasons, we agree and further conclude that this error was not harmless. We therefore reverse and remand with directions for a new trial.

## BACKGROUND

¶2 The State charged Rice with one count of disorderly conduct and one count of unlawful use of a facsimile firearm. According to the criminal complaint, Stan[2] called law enforcement after Rice walked across Stan's yard and "drew a black revolver and pointed it" at Stan. Upon questioning Rice, law enforcement learned that Rice had "gone to confront [Stan] about [Stan's] behavior towards children." Law enforcement further discovered that the black revolver was an "airsoft gun."

¶3 At trial, Stan testified that Rice, whom Stan had never met, "walked across [Stan's] lawn," and Stan "met him halfway down" a ramp leading to the front door. Stan stated that when Rice was about four feet away, Rice "pulled out" "a pistol," "pointed it at [Stan]," and said "something about" "leaving kids alone." Stan testified that after Rice pointed the firearm at him, Stan "went inside" and "sat back down." At the time of the incident, Stan believed that the pistol was a real firearm. He also testified that he felt "[s]cared" and "[t]errified" when the airsoft gun was pointed at him, and he was worried that Rice would come back to his house. Stan confirmed that he did not threaten Rice "in any way before" Rice "pulled a gun on" him, nor did he say anything to Rice before Rice pulled the

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we refer to the victim in this case using a pseudonym.

firearm out. On cross-examination, Stan denied swearing at Rice and denied stating that he was "going to kill" Rice.

¶4 Rice's friend, Jordan Huston, also testified. Huston testified that Rice sent him a text message on the date of the incident, telling him that Rice "had an altercation with someone who was driving around the Village of Almena" and that this individual was "looking at some of the kids that … live next door to [Rice's] apartment." Huston further stated that Rice had texted him that he had "pulled a gun on the individual." Although Huston could not recall whether Rice had texted him that the individual was threatening Rice, Huston did state that he thought Rice had texted that the individual "started yelling" at Rice. Rice further informed Huston by text message that Rice "was in danger of his safety" and that he "could potentially end up in jail."

¶5 Additionally, a police officer testified that he interviewed Stan after the incident and that Stan was "very upset," "shaking," and "crying." The officer later arrested Rice and located the firearm.[3]

¶6 The defense called Mike,[4] who was 14 years old at the time of trial, to testify. Mike testified that he knew Rice and witnessed the incident between Rice and Stan while walking down the street with his friend. According to Mike, he "heard two things": Stan saying "[t]he 'B' word"; and Stan saying that "he was going to kill [Rice]." Mike further testified that he observed Stan make a

---

[3] After the State rested, the circuit court orally granted Rice's motion to dismiss the facsimile firearm charge because the State had failed to meet its burden of proof on each element of that offense. Later, the court entered a written judgment of dismissal on that count.

[4] For privacy purposes, we refer to the minor witness involved in this case using a pseudonym.

movement "[f]or his waist" and then saw Rice "pull out an airsoft gun." Mike described Rice as having the airsoft gun "right in his waist."

¶7 Finally, Rice testified in his own defense. Rice stated that on the day in question, he was asked to "watch over kids in [the] neighborhood" and that, during this time, he "noticed somebody that shouldn't have been in the area watching over them." When Rice "went to look for the kids," he witnessed Stan "standing at the opposite end of one of the roads." Rice testified that he then "walked down" the road "to [Stan's] house" to have a "conversation," "with no intention of causing harm."

¶8 According to Rice, "the interaction escalated" before he could reach the ramp. Rice claimed that Stan met him with "anger" and "yelling." In particular, Rice alleged that Stan swore at him and stated, "I'll kill you." Rice then recalled that Stan "started lunging towards" him and that Stan reached "towards his waistband area." Rice stated that he "didn't know if [Stan] was reaching for a gun or a weapon" and that, "[a]t that point," Rice "showed the airsoft that [he] had on" him "as a deflection to resolve." Rice disputed that he pointed the airsoft gun at Stan, stating he pointed it "towards" Stan's feet.

¶9 Rice testified that during the interaction, a group of children were standing behind him on the edge of Stan's lawn. Rice further alleged that he was "afraid" "for the kids' safety behind" him, but he was not afraid "for [his] own safety." In addition, Rice felt the "need to protect" himself and the children when he thought Stan was "reaching for something." Rice testified that once Stan "stopped reaching, [Rice] backed off from the situation." The interaction then ended, according to Rice, and Rice told Stan something to the effect of "leave these kids alone."

¶10    On cross-examination, Rice conceded that he did not ask for Stan's permission "to go onto his property," that he carried the airsoft gun with him when he went to Stan's house, that the gun did not have an orange tip on it, and that the gun had the appearance of a real firearm. Rice further conceded that he never observed Stan in possession "of any weapon." Rice later stated, on redirect, that he had found the airsoft gun hours before his interaction with Stan while "going through the neighbor's garage."

¶11    Following the close of evidence, the circuit court held a jury instruction conference with the parties. Rice renewed[5] his request for the pattern self-defense jury instruction, *see* WIS JI—CRIMINAL 800, and the pattern defense of others jury instruction, *see* WIS JI—CRIMINAL 825. The State objected, arguing that these defenses were inapplicable to the disorderly conduct charge under ***State v. Olsen***, 99 Wis. 2d 572, 299 N.W.2d 632 (Ct. App. 1980), and that, even if they were applicable, Rice had "no knowledge" of Stan possessing a "weapon at any point before or after" the interaction.[6]

¶12    The circuit court denied Rice's motion to include the pattern self-defense jury instruction or the pattern defense of others jury instruction. Citing ***State v. Bougneit***, 97 Wis. 2d 687, 294 N.W.2d 675 (Ct. App. 1980), the court reasoned that "[t]he problem in this case is that I think that [Rice's] conduct can certainly be classified as 'disorderly conduct'; and if he engages in disorderly

---

[5] Rice filed a pretrial written request for the circuit court to provide the pattern self-defense jury instruction and the pattern defense of others jury instruction. The court noted at the start of the trial that the parties would discuss the appropriateness of these requested instructions at the jury instruction conference.

[6] In the alternative, if the circuit court granted Rice's request, the State moved to include the pattern jury instructions for provocation.

conduct, then he's not entitled to the defense." In addition, citing *Olsen*, the court stated that it was "not even sure that there was a threat" because the testimony of Mike and Rice was that Rice never pointed the airsoft gun at Stan or "threatened him with" the gun. The court stated that Rice could not have engaged in self-defense "if he didn't actually point the firearm at" Stan. The court also noted that a comment to WIS JI—CRIMINAL 800 provides that the instruction is "intended for use with crimes involving the intentional causing of bodily harm" and that there was no "bodily harm" in this case.

¶13 The jury ultimately convicted Rice of the disorderly conduct charge. Rice now appeals.

## DISCUSSION

¶14 To begin, on appeal, the State does not argue that self-defense or defense of others are unavailable defenses to a disorderly conduct charge. Accordingly, we assume without deciding those defenses are available in this case. The only issues on appeal are whether there was "some evidence" at trial in support of the privileges of self-defense and defense of others to warrant instructions on those defenses and, if so, whether the circuit court's failure to provide those instructions was harmless. *See State v. Stietz*, 2017 WI 58, ¶¶16, 61, 375 Wis. 2d 572, 895 N.W.2d 796. Whether there are sufficient facts to warrant the circuit court's instructing the jury on self-defense, and whether an error is harmless, are questions of law that this court reviews de novo. *Id.*, ¶¶14, 62.

## I. Self-defense and defense of others

¶15    "Wisconsin law establishes a 'low bar' that the accused must surmount to be entitled to a jury instruction on the privilege of self-defense." *Id.*, ¶16 (citation omitted).  "The accused need produce only '*some evidence*' in support of the privilege of self-defense." *Id.* (emphasis added; citation omitted).  "A court must determine whether a reasonable construction of the evidence will support the defendant's theory viewed in the most favorable light it will reasonably admit from the standpoint of the accused." *Id.*, ¶13 (citation modified).  In deciding whether this low bar has been met, a court "is not to weigh the evidence." *Id.*, ¶18.  Evidence "satisfies the 'some evidence' quantum of evidence even if it is 'weak, insufficient, inconsistent, or of doubtful credibility' or 'slight.'" *Id.*, ¶17 (citation omitted).  "A jury must be instructed on self-defense when a reasonable jury could find that a prudent person in the position of the defendant under the circumstances existing at the time of the incident could believe that he was exercising the privilege of self-defense." *Id.*, ¶15.

¶16    The law of self-defense allows a person to threaten or intentionally use force against another only if: (1) the person believed that there was an actual or imminent unlawful interference with his or her person; (2) the person believed that the amount of force he or she used or threatened to use was necessary to prevent or terminate the interference; and (3) the person's beliefs were reasonable. *Id.*, ¶¶10-11; WIS. STAT. § 939.48(1); WIS JI—CRIMINAL 800.  In addition, the law of defense of others allows a person to threaten or intentionally use force to defend another only if: (1) the person believed that there was an actual or imminent unlawful interference with a third person; (2) the person believed that the third person was entitled to use or to threaten to use force in self-defense; (3) the person believed that the amount of force used or threatened by the

defendant was necessary for the protection of the third person; and (4) the person's beliefs were reasonable. Sec. 939.48(4); WIS JI—CRIMINAL 825.

¶17    On appeal, Rice argues that the circuit court erred by failing to provide the jury with these instructions because there was "some evidence" to support self-defense and defense of others. In response, the State contends that the court did not err for two reasons. First, the State argues that the evidence introduced at trial did not reasonably suggest that Rice threatened to use force.[7] According to the State, Rice testified that he did not point the airsoft gun at Stan, and, therefore, no threat of force occurred.

¶18    As Rice contends, this reasoning is flawed. The jury could have reasonably found, based on the evidence before it, that Rice was threatening Stan with force when he pulled the airsoft gun from its holstered position.[8] Rice testified that he drew the airsoft gun "as a deflection to resolve" the situation after Stan lunged at him and moved toward his waistband as if to possibly grab a weapon. Rice further testified that he pointed the airsoft gun "towards [Stan's] feet." Although Rice never testified that he drew the airsoft gun to threaten Stan, one reasonable interpretation of Rice's testimony is that he pulled the gun out to

_____

[7] As to self-defense, the State does not appear to dispute that Rice met his burden to show some evidence of the first and third elements. *See* WIS JI—CRIMINAL 800. Similarly, as to defense of others, the State does not appear to dispute that Rice met his burden to show some evidence of the first, second, and fourth elements. *See* WIS JI—CRIMINAL 825. Accordingly, we do not address these elements further.

[8] To the extent the State argues that Rice forfeited this argument, we disagree. While it is true that Rice argued before the circuit court that Stan testified that Rice pointed the airsoft gun at him—and that "this is more saying, if you do find that that was the case, then … that action was done in self-defense"—Rice also argued that the threat of force occurred when Rice unholstered the airsoft gun.

threaten Stan with force—i.e., Rice would fire the gun at Stan if Stan continued to reach for his waistband.

¶19    Accordingly, this case is distinguishable from *Olsen*, where this court concluded that the defendant was not entitled to a self-defense or defense of others jury instruction because his actions merely involved protesting by forming a line blocking a road. *See Olsen*, 99 Wis. 2d at 574, 579-80. As we stated, the defenses were inapplicable because the State "did not claim that defendant used force. Defendant and his codefendants emphasized that they did not resist arrest and that they were peaceful at all times during their demonstration." *Id.* at 579-80. For the reasons explained, Rice put forth "some evidence" that he threatened to use force against Stan by unholstering the airsoft gun.

¶20    Second, the State argues that the circuit court did not err by failing to provide the self-defense or defense of others jury instructions because no evidence was introduced at trial demonstrating that Rice subjectively believed that pointing the airsoft gun at Stan was necessary to terminate an unlawful interference. The State contends that because Rice denied pointing the airsoft gun directly at Stan, Rice could not have believed that pointing the gun at Stan was necessary to terminate an unlawful interference.

¶21    We disagree, for similar reasons already articulated. That is, the jury could have reasonably found that Rice threatened Stan with the airsoft gun without directly pointing it at Stan. To reiterate, Rice testified that he pulled out the airsoft gun "as a deflection to resolve" the situation only after Stan lunged at him and reached for his waistband as if to grab a weapon. As Rice argues on appeal, one reasonable interpretation of this testimony is that Rice believed removing the

airsoft gun from its holstered position—i.e., threatening Stan—was necessary to prevent or terminate Stan's alleged unlawful interference.[9]

¶22    In short, Rice met his burden to show "some evidence" to be entitled to jury instructions on the privileges of self-defense and defense of others, and the circuit court erred by denying his motion to provide these instructions.

## II.  Harmless error

¶23    We will not set aside a judgment of conviction "if it is clear beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error or if it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *See Stietz*, 375 Wis. 2d 572, ¶63; WIS. STAT. § 805.18.  The State bears the burden of proving that the circuit court's error in this case was harmless.  *See State v. Sherman*, 2008 WI App 57, ¶8, 310 Wis. 2d 248, 750 N.W.2d 500.

¶24    The State contends that the error in not providing the self-defense and defense of others jury instructions was harmless because Rice provoked the altercation by committing disorderly conduct prior to unholstering the airsoft gun. The State appears to contend that it is clear beyond a reasonable doubt that Rice committed disorderly conduct prior to removing the airsoft gun by entering Stan's property without permission with the intent of confronting Stan about his alleged behavior with children.

---

[9] Given our conclusion in this regard, we need not address the parties' arguments concerning *Thomas v. State*, 53 Wis. 2d 483, 192 N.W.2d 864 (1972), and *State v. Johnnies*, 76 Wis. 2d 578, 251 N.W.2d 807 (1977).  That is, Rice's testimony of what occurred is not inconsistent with his claims of self-defense and defense of others.

¶25    While we agree with the State that "[e]ngaging in what would be considered disorderly conduct under [WIS. STAT.] § 947.01(1) would constitute 'unlawful conduct' for the purposes of [WIS. STAT.] § 939.48(2)," *see* § 939.48(6) (stating that "unlawful" means "either tortious or expressly prohibited by criminal law or both"), there remain factual issues as to whether Rice's conduct prior to his unholstering of the airsoft gun constituted unlawful conduct, *see* § 939.48(2)(a).

¶26    The jury heard at least two different versions of what occurred prior to the altercation, and it is not clear beyond a reasonable doubt which version (if either) the jury believed. In Rice's version, corroborated by another witness, Rice did not state anything aggressive or confrontational to Stan upon walking up to Stan's porch. In the State's version, Rice was the aggressor who approached Stan's home without permission to intimidate Stan. While the jury may have reasonably found that the State's version was more accurate (and convicted Rice on that basis), the jury may have reasonably believed the defense's account and concluded that Rice did not commit disorderly conduct prior to unholstering the airsoft gun.

¶27    The jury may have also disregarded these factual disputes surrounding Rice and Stan's initial interaction and convicted Rice of disorderly conduct based on his act of removing the airsoft gun, his act of pointing the airsoft gun toward or at Stan, or some combination of these facts. In fact, the State did not rely solely on Rice's conduct prior to the altercation in proving Rice's guilt on the disorderly conduct charge. The State argued to the jury that Rice was guilty of disorderly conduct because the evidence demonstrated that Rice "went onto another person's property *and* pulled what a reasonable person would believe to be a gun.… Even flashing a gun at someone, pointing at their feet, pointing at them, that will provoke a disturbance." (Emphasis added.) In response, Rice argued that

11

if the State was arguing that Rice engaged in disorderly conduct prior to unholstering the airsoft gun, "then we'd have to start charging Girl Scouts with Disorderly Conduct for approaching your house." Therefore, there remain factual issues as to whether Rice's conduct prior to his unholstering of the airsoft gun constituted unlawful conduct because there were different versions of what transpired and it is unclear whether the jury found Rice guilty of disorderly conduct for his actions prior to pulling the airsoft gun.

¶28 The State cites *Bougneit* in support of its argument that Rice engaged in disorderly conduct prior to the altercation. *Bougneit* is unhelpful to the State, however, because the relevant issue addressed in that case was whether the circuit court erred by instructing the jury on the loss of the privilege of self-defense. *Bougneit*, 97 Wis. 2d at 695. The undisputed facts in that case demonstrated that the defendant had engaged in disorderly conduct of the kind which would provoke others to attack him, and, therefore, the provocation instruction was warranted. *Id.* at 696-97. Here, as explained, factual issues regarding Rice's conduct remain for a jury to decide.

¶29 To summarize, the jury may have reasonably found that Rice's conduct prior to unholstering the airsoft gun was unlawful because he engaged in disorderly conduct. If that were the case, the issue of self-defense or defense of others would be a moot point for purposes of the disorderly conduct charge because the State would have met its burden of proof. However, and to the contrary, the jury may have reasonably found that Rice's conduct prior to

unholstering the airsoft gun did not constitute disorderly conduct.[10]  Or the jury may have ignored the factual disputes surrounding Rice and Stan's initial interaction and focused on the subsequent altercation.

¶30    In these latter situations, the jury should have considered the self-defense and defense of others jury instructions because there was "some evidence" to support those defenses.  *See Stietz*, 375 Wis. 2d 572, ¶16.  And had they done so, they may have reasonably determined that Rice acted in self-defense or in defense of the children and found him not guilty.  Given the record before us, it is unclear which conduct formed the basis of the jury's decision to convict Rice of disorderly conduct, and the circuit court's error in not providing the self-defense and defense of others jury instructions was not harmless.  We therefore reverse Rice's judgment of conviction and remand with directions for a new trial, consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[10] We do not mean to foreclose the State from arguing, in future proceedings, that Rice provoked Stan by other "unlawful" means other than disorderly conduct.  *See* WIS. STAT. § 939.48(6).  If the State were to make this argument, and "some evidence" is again put forth warranting the self-defense or defense of others jury instructions, the jury would need to consider whether Rice provoked Stan and, if so, whether Rice would have nonetheless been privileged to threaten Stan with the airsoft gun.  *See* § 939.48(2)(a)-(c).